Thank you, Your Honor. May it please the Court, my name is Craig Weinerman. I represent the petitioner-appellant Jason Lee Midkiff. What happened when Mr. Midkiff attempted to seek replacement of his trial counsel, in our view, was nothing short of outrageous. The trial judge went into that proceeding with his mind made up. He made no inquiry whatsoever regarding the nature of the conflict, the nature of the breakdown in the communication between Mr. Midkiff and his trial counsel, which his trial counsel, as an officer of the Court, notified the trial court in a sworn affidavit that communication had broken down and had deteriorated to the point where trial counsel did not believe that adequate representation was possible. The trial judge asked no questions about any of the problems between the two. The trial judge asked no questions about the extent of the trial preparation that trial counsel had conducted on behalf of Mr. Midkiff, with trial just being a few days away, whether any witnesses had been subpoenaed. Mr. Midkiff was not given an opportunity to air his grievances. He was able, in one brief interlude, to tell the trial court that he had given a list of witnesses to his trial counsel and very few of them had been contacted or interviewed. So there was absolutely no factual development by the trial judge. Is that contrary to clearly established Supreme Court law? We believe it is. What's the best case? We believe, if you look at a number of the cases, mainly the conflict of interest cases. But those are conflict of interest cases where counsel represents conflicting interests. That's true. First of all, we're dealing with a conflict case. Sure. That's a different kind of conflict, though. It's a different type of conflict, but the principle is still the same, that when a conflict is presented to the Court, and we believe it makes no difference whether it's a conflict based on a breakdown of communication versus a conflict based on multiple representation, if there's a potential for an adverse effect on the representation, the trial judge has a duty to inquire. Was there anything before the trial judge that established the existence of a conflict? There were communications problems. He was told of communications problems, but I don't recall anything in the record saying that there was a claim that the conflict had arisen between counsel and the defendant. Well, you have to look at a number of things. First, and I believe it's at our excerpt of record, page 5, trial counsel filed an affidavit with the Court, and I'm going to have to check to see if he used the word conflict. He didn't, you know, use the term of our conflict, but in essence he stated that he had, that Mr. Mitkiff had concern about the representation, and it escalated on April the 17th, which was 11 days, I'm sorry, seven days before trial. And here's the point I think that fits into the conflict cases. At this point, the communication between Mr. Mitkiff and myself had deteriorated to the point where further adequate representation is no longer possible. He did not use the buzzword breakdown in communication, but certainly he informed the trial judge of a problem such that it should have triggered the constitutional duty of the trial judge to make an inquiry about the nature of the conflict and the nature of the breakdown in the communication. During the hearing itself, and I use that term hearing, you know, with quotation marks, because it wasn't much of a hearing. It was mainly the trial judge telling Mr. Mitkiff that he was not going to get a new attorney, that the trial was not going to be continued, told him about he was between a rock and a hard place, told Mr. Mitkiff the case against you looks pretty strong. I've taken pleas from co-defendants. I've examined the physical evidence in this case. I've read the police reports, and you're not going to like the testimony. If you go to trial, you're going to get 500 months. This was the inquiry, which in our view is not the type of inquiry that the Constitution requires. The trial judge made no inquiry about even really the prejudice issue. In other words, the prosecutor did not object at any time during the hearing to new counsel being substituted or the trial being continued. Getting back to, Judge, your point about the best case and whether a clearly established federal law or precedent from the Supreme Court supports our position, as I indicated in the brief, we don't have to produce what I think this Court has referred to as a spotted calf. And if you look at the ADPA, Section 2254-D1, it authorizes habeas relief based on the application of governing legal principles to a set of facts that are different from those of the case in which the principle was announced. And in our view, that would allow a habeas court to grant relief on these conflict of interest cases, even though the conflict of interest in this case stemmed from a breakdown in communication as opposed to multiple representation. It's a governing legal principle. And we're not just – a habeas court is not precluded from granting relief if the case before it is not on all fours factually with the Supreme Court case. Is the breakdown in communication always a conflict? In other words, you could have a disagreement on trial strategy, for example, that the defendant said he absolutely would not agree to an insanity defense and the lawyer says, well, that's your best chance. If the lawyer – if the defendant continues to insist there be no insanity defense, as an example, is that really a conflict of interest? That's certainly a disagreement about trial strategy. Right. Certainly there's a difference between strategy, tactics, and whether there's a breakdown. In this case, what was presented to the trial judge was a trial attorney who was unprepared and who had not interviewed witnesses, and there are cases which we cited in our briefs. Failure to investigate is never – can never be coined trial tactics or trial strategy. So while your example, I might agree with you on that, in this case, what the disagreement, which led to the conflict, which led to the breakdown in communication, was the failure of trial counsel to investigate the case and interview witnesses, which cannot be strategy or tactics in any view. Unless the Court has further questions, I'd like to reserve some time for rebuttal. All right. Thank you. May it please the Court, Carolyn Alexander for Respondent. Before I go to the merits of the case and before I answer the question about deference and controlling precedent, I'd like to briefly address the issue of procedural default. I did address that toward the end of my brief. The District Court didn't reach the issue of procedural default and, in fact, simply ruled on the merits of the case, declined to reach the exhaustion issue. I think that's an important issue in light of the U.S. Supreme Court's decision in Baldwin v. Reese, this Court's decision in Casey v. Moore on the issue of procedural default. What those cases hold and what those cases now make clear, and has always been the law in federal habeas, is that a petitioner does not fairly present a claim if the State Court must read beyond the petition to find the claim. That's exactly the case here. Petitioner did not allege his trial court claim in his post-conviction petition. He alleged a claim against counsel. He filed a bar complaint against counsel. He faulted counsel for failing to withdraw timely so that the trial court misunderstood the motion to withdraw and to substitute counsel. Even in Petitioner's brief, his best argument is, but I made it clear in my post-conviction deposition. Even if that's the case, and I think the record disputes that contention, it's not good enough under Baldwin and under Casey. He has to allege the claim in the petition. And, in fact, Oregon law, Oregon Revised Statute 138-550, clearly says the claim must be alleged in the post-conviction petition. He argues that, well, yes, but the post-conviction court went ahead and decided the claim anyway. That's incorrect as well. What the post-conviction court said was, in ruling on the trial counsel claim, the only claim in the petition was that Judge West, the trial judge, fully explored the issue of any conflict of counsel. He did that. That's a factual finding. And he did that in the guise of ruling on the counsel claim. So I think it's clear that this claim is defaulted. He didn't raise the trial court claim regarding the motion to substitute counsel until the post-conviction appeal. It's there in that brief. It's in the federal habeas petition. It's not in the post-conviction petition. I think that's one of petitioner's biggest problems here on appeal. Counsel, you recognize we can't decide the case on the merits even if the claim was unexhausted under the habeas statute. Correct. That's correct, Your Honor. Okay, so could you discuss the merits? Yes, certainly. Let me turn to that. The courts hit the nail on the head here. The issue is what's the controlling precedent? In petitioner's view, the controlling precedent is the Kyler v. Sullivan, Holloway v. Arkansas line of cases. As the court pointed out, those are actual conflict cases involving multiple representation of defendants. That's a particular issue that the Supreme Court has addressed several times. That is not this case. In the state's view, the controlling precedent is Morris v. Slappy. Petitioner doesn't address that case in his brief. He refers to it for another point of law. He never distinguishes the case at all. Morris, I think, is the proper controlling precedent under 2254d. In Morris, the petitioner, and this was a 2254 case, the petitioner had become disgruntled with his trial attorney during trial, and he wanted a continuance of the trial. His basis for that was, my attorney's not prepared to go forward. That's exactly the case here. The court, the trial court in petitioner's case, despite petitioner's contention, did hold a hearing. There was an inquiry, despite his discussion with petitioner about the consequences of proceeding pro se, if that's what his choice was. But during that hearing, what the court said was, I'm not going to continue this case. According to petitioner's affidavit, excuse me, according to counsel's affidavit, petitioner had been disgruntled with his representation from day one, five months before. Petitioner never said anything to the court, waited until the Thursday before the Monday to say, well, wait a minute, I don't like this guy. He's not prepared to go forward. And even though the court didn't say to petitioner, what's the basis of any conflict? I agree with the court. This isn't a conflict case per se. There was a strain in communication. The post-conviction court found that as a fact, that that's all the record showed. Petitioner doesn't point to clear and convincing evidence to dispute that. There's a strain between them, After the co-defendants pleaded guilty and agreed to testify against petitioner, petitioner says in this hearing several times, he won't interview the rest of my 30 witnesses. He's only interviewed seven of them. He won't provide me with discovery. His concern was counsel wasn't prepared to try the case. Now, unlike Morris, counsel didn't say, yes, I am, I'm prepared. However, the post-conviction court found, and the district court found conclusively, counsel was effective. He provided effective representation. Rather than pursue that claim on appeal, petitioner just drops it. There's no challenge to the counsel claim. Counsel's been conclusively determined to be effective. So, to me, that's equivalent to Morris v. Slaffy. It is a Morris v. Slaffy case, and petitioner doesn't make any attempt to distinguish Morris v. Slaffy. I believe that's the controlling precedent in this case. The other issue is, even if the court finds that, okay, in this particular case, the Kyler line of cases apply. Petitioner has not shown that there was an adverse effect on counsel's representation. Therefore, prejudice can't be presumed. Even under the case he cites, Shelby Whittock, from this court, you have to show prejudice. He's stuck with that. There simply is no prejudice in this case. Counsel has been determined to be effective. In addition, petitioner challenged his plea, not in this proceeding, but in post-conviction. It's been conclusively determined that his plea was knowing and voluntary. In addition, he never presented testimony about what any of these witnesses would have testified to, had they been called, had counsel investigated. And he's shown no evidence that he would have gone to trial on 11 counts, rather than five, and faced a sentence of 504 months, as opposed to the 238 months that he took in this plea deal. So even under the conflict cases, he simply can't prove prejudice. And that's determinative as well. The only other issue I'd briefly address is the issue of United States v. Foreman. The district court found that United States v. Foreman was an alternative ground to deny relief. And U.S. v. Foreman says that if a plea is knowing and voluntary, all antecedent constitutional defects are waived. That's the case here. Again, petitioner doesn't challenge his plea. And it's been conclusively determined by the state courts that the plea was knowing and voluntary. Therefore, that also is an alternative basis to affirm. Counsel, opposing counsel did cite Morris in his brief, but he cited in support of this position. How do you explain that? Correct. I was going to refer to counsel's brief, because I don't remember the specific context in which he cites that. But I'd have to look to answer your question. I was just curious. Since you said he didn't distinguish it, I was just curious as to why. Well, without looking, I would say that what he doesn't do is describe the facts of Morris and describe the kind of case Morris was and what the holding in Morris ultimately was. This is a petitioner's case. It is a motion to deny a request for continuance. That's essentially what it is. That's the same issue in Morris. He never talks about that. There are some general principles in Morris, absolutely. And he does cite those in support of his case. But I think when you read the facts of Morris, the ultimate conclusion of Morris, he makes no attempt to distinguish that. Thank you. If the Court has further questions. Thank you. Well, perhaps I'm the one who should explain why I cited Morris. Morris has been cited, and really it comes from this Court's decision in Schell. And Schell held that an irreconcilable conflict between the defendant and his court-appointed counsel implicates the Sixth Amendment. And I cited Schell. And Morris v. Slaffy was cited by this Court to support that proposition. So you cited Morris to support your argument that there was an irreconcilable conflict? Correct. Also, that a constitutional violation occurs when a conflict between a defendant and his attorney becomes so great that it results in a total lack of communication. Again, that comes from Schell, but I believe – I'm sorry. Again, that the irreconcilable conflict between a defendant and his court-appointed counsel implicates the Sixth Amendment. What about the language in Morris that talks about the continuance issue? Well, yes. First of all, Morris – the main holding in Morris is that a defendant has no right to a meaningful relationship to his attorney. I think that was the essence of the holding. But one of the things that Morris said is that expeditiousness in and of itself, as far as a calendar, cannot trump a defendant's right to counsel and to have an effective counsel and to have a counsel that's not harbored with a conflict. So there are many different principles in Morris. And again, the principle that we hope that the court will look at is that expeditiousness itself cannot trump a potential conflict between – Well, doesn't Morris say, though, that there is broad discretion in the trial court in these matters and that only if it's arbitrary and completely unreasonable is it considered to be an undue emphasis on expeditiousness? Well, I don't know that I would agree that it goes that far. But before you even get to that point, if not Morris, the other cases, particularly Schell and the other Supreme Court conflict of interest cases, the judge has to make an inquiry. And I'm getting back now to the problem in this case. Before a judge can say timeliness is a problem or we don't want a continuance, the judge still has to inquire and has to determine the nature of the conflict and the reason that there's dissatisfaction and whether it's risen to the level of an irreconcilable conflict. I want to just mention one other point in the remaining seconds I have. We believe there is no procedural default in this case. If you look at page 112 and 113 of the excerpt of record, it's the ruling of the post-conviction trial judge who decided the issue of whether the trial judge erred in not allowing the trial counsel, Mr. Hatch, to withdraw. And he also decided the constitutional question, the federal constitutional question of whether there was an adequate inquiry. And I'm not conceding that Mr. Midkiff didn't raise the issue appropriately in the post-conviction trial court, but whether he did or not, the trial judge, the post-conviction trial judge, did decide it and there's no comedy or problem for a habeas court to decide the issue. All right. Thank you. Is that the ruling that the opponent says included a finding that the plea was not coerced, it was knowing and voluntary? I would have to, if the court will allow me, I would have to check to see. Do you agree that that ruling finding was made by a state court post-plea? This is what the state, the post-conviction trial court said, that it was Mr. Midkiff's choice to stick with counsel, that it was his election. I think he used the word election. I would have to look at the language to be able to tell you whether he also made an additional finding that his plea was voluntary. Would that take care of the case right there? Assuming that's true and he enters a knowing and voluntary plea, hasn't he waived pre-plea constitutional problems? No. As I argued in my brief, there is not a break in the chain here. He went through his motion for new counsel. It was denied, and within an hour he was back in the court with the same unprepared trial counsel, having just heard all the things. But then he raised the claim that the plea was coerced because of inadequate counsel. Subsequently. Subsequently he did. At a different hearing with a different attorney. The finding was that the plea was knowing and voluntary. We believe he has challenged the knowing and voluntariness of this plea throughout the state court post-conviction proceedings, both at the trial level and on appeal. And our argument is simply that there was not a break in the chain in this case because the two issues overlap, the voluntariness of the plea and the denial of the motion for substitute counsel. Thank you. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for a decision by the court. The next case on calendar for argument is Osiris v. Thompson. Thank you.
judges: T.G. Nelson, Rawlinson, Pollak